Thank you. Good morning, everyone. And good morning, Judge Aldershot from Santa Barbara, California. Are you with us, Judge Aldershot? Yes, sir. Can you see me? In all your glory, we can see you. Yes, indeed. Oh, thank you. Thank you. It's good to see you, Jane. I haven't seen you for a while and you look great. Thank you. Thank you. I feel great. That's fine. We can get started with the first case, Karpenko v. Leendertz. Good morning. Good morning. May it please the Court, I'm Linda Shea-Gardner and I represent Paul Leendertz, who is the appellant and cross-appellee in this matter, and I am requesting to reserve five minutes for rebuttal. Very good. I think the Court finds itself in a very unique situation here, where in a lot of the Hague cases that the Court may have seen before, there has not been a full litigation of the custody matters before the Hague matter enters the scene. So someone may have filed for a temporary order or had requested some relief, interim relief, but there had not been full hearing. I believe that's the distinguishing factor in this case. I don't find any distinguishing factor in that. The district court's finding that she was a resident of Holland is the crucial thing, and the whole purpose of the Hague Act is to prevent these child grabbings, and your client went, whatever there is to do with custody, the Hague Act has nothing to do with it. The Hague Act has to do with taking a child from where she has residence somewhere else, and that's what happened here. I believe that the issue is the jurisdiction, and in this particular case, the appropriate jurisdiction. Excuse me, let me jump in here. I have a different view that has not been briefed. This is equity, is that not? The cases indicate that interpreting the Hague Convention is equity. Do you agree? Yes. All right. We have the doctrine of clean hands in equity. You can't come into seeking equitable relief under the Hague Act if you don't have clean hands. Yes. Considering the mother's total ignoring of the that she is not entitled to relief because she doesn't have clean hands. I believe I did it in my motion before the district court on that same issue of it being dismissed, and I raised that in my brief on particularly the issue that my motion to dismiss should have been granted because mother had done nothing except appear in Lehigh County, and at the time that this case was first initiated in the district court, the case was on appeal at the superior court. However, importantly, mother never objected to the jurisdiction on her appeal to the superior court. She never raised that issue. She participated fully, and I think it also raises the issue of whether or not she acquiesced to the child's in the United States or coming to the United States because she chose not to appear at trial. I don't know if you fully addressed Judge Aldersert's clean hands doctrine question, but you're interspersing it with the jurisdictional issue, which maybe we can touch on, but I wouldn't let you off the hook of that clean hands question that you should still answer. What is the jurisdictional question that you're raising? I'm sorry. The jurisdictional question. Are you suggesting that the federal court had no jurisdiction in this case? I believe that it should have abstained given the... Well, aren't we bound by Yang v. Tsui? Well, I think Yang v. Tsui is a different situation, and I... Well, let me... We said, maybe I should say Judge Roth wrote that when you have a state court and you have a federal proceeding, but the Hay Convention has not been raised or litigated in the state court, abstention is not appropriate. Doesn't that pretty much address your jurisdiction? Well, I think that the Yang case turns on the fact that that was an interim order. There had been no prior hearings or any evidence taken. It was merely an initial court order without hearings. You have no trouble with the idea that the Hay Convention presents a federal question? I have no problem with that, no. But I think that in this particular case, if you look back at the orders that these parties had in 2002 in Lehigh County, they had submitted to that jurisdiction... Well, that order was also vacated later, but I want to stick with this idea of initial jurisdiction first. You have no problem with the idea that in state court, custody in the best interest of the child is the focus of the inquiry? Generally, yes. And that in federal court, it's a totally different inquiry, that being the country of habitual residence? The jurisdiction where custody should be decided. And I believe that that's... We're talking about the Hague Act, not the jurisdiction where custody. Hague Act has nothing to do with custody. Right. But I believe in the Yang case, that's the specific site, is that the jurisdiction over the custody, the determination of the jurisdiction over the custody dispute... Well, the point is that they're not parallel proceedings at all. They're looking at two different, entirely different things. But it ends up with a totally different result. If you have the Lehigh County order... Well, but that doesn't mean that the federal court doesn't have jurisdiction. No, I agree with you, it does not. But I think that this is one of the other factors, is that you now have an order from a district court, as it stands now, and the order from Lehigh County, reaching totally different decisions about where jurisdiction is. But the Lehigh County court was not concerned with where the child habitually was located. It was a totally different inquiry. Well, it had been in the 2001 and 2002 stipulations that the parties reached. And it also, in 2002, said that if there was an attempt to bring a case in another jurisdiction, it would be null and void. Okay. I'm taking you away from Judge Aldister's question. Mr. Gardner, I simply want to say that time is fleeting, and I'm making the suggestion that I feel that there are things in your favor in this case, but jurisdiction is not. And I'd suggest you move over to something else. And while I have interrupted you, the district court found, as a fact, that the September order of the court wiped out completely the February order. And we have the testimony of the mother's lawyer, Rudas, who testified in her affidavit was to the contrary. Now, you did not argue that the finding of fact was clearly erroneous. I think I cited in there that Ms. Rudas indicated that she had, in fact, advised Ms. Karpenko of the implications of her decisions regarding the custody matter. And I believe I addressed that in the brief. In addition, I think that, you know, this is very important because mother is essentially doing her jurisdiction shopping. She didn't get what she wanted in Lehigh County, and then she's doing it under the hay, which I believe is the unclean hands. It's Mr. the father who went and grabbed the child. He had a custody order from Lehigh County that said he could pick the child up anywhere. He had means to get the court order from Pennsylvania enforced if it would be properly enforced in Holland. Instead of doing that, he went and grabbed the kid. Now, to me, that is pretty unclean hands. I understand that perspective. I think that, you know, mother had been keeping the child from father. Clearly, the district court found this for quite some time. She was not going to... He had remedies, and the remedy wasn't grabbing the kid. Well, I think that he didn't have a remedy to enforce that order in Holland until he got the order May 20th. All right, and then he could take it to Holland, and if it was appropriate to have it enforced in Holland, that would be done. And he chose to use self-help instead. I don't think he was required to enforce the order there. How is equity going to resolve to a pair of unclean hands? I believe in this case... I'm sorry. Unclean hands applies to the plaintiff. Well, Judge Roth is suggesting that maybe the husband had unclean hands by going to Holland to abduct the child. Well, I don't know. Do you go back to first and time? At the time he went to Holland, the only court order, the only court order was the common pleas giving him the right to custody over a period of time that was denied to him. I am not at all certain that he was violating any law at that time. Ms. Gardner would agree with that, right? I would definitely agree with that. I think that he had the right to do it. Is it there a procedure whereby you have to domesticate an order in the United States in Holland in order to exercise rights under that order? I think there's nothing that says that it's mandatory. Did the Dutch legal experts testify as to that at the hearing? As to whether he could pick up the child? As to whether the Pennsylvania court order needed to be registered with the court in Holland in order to enforce it? Well, I think that they sort of differed on that issue because on the one hand, I think we have mother's own attorney, which is interesting. You know, mother's own attorney came over to testify. And the other expert indicated that if it was enforced, even if it was enforced later, that there would have been nothing wrong with him doing it. You have five minutes of rebuttal time left, so we'll go on to the appellees. Thank you. We'll get you back on rebuttal. Thank you. Mr. Cullen? May it please the Court, Your Honor. May I address, Judge Aldersert, your... We need your name first for the record. Stephen Cullen again, Your Honor. May it please the Court. Judge Aldersert, may I please address, first of all, your concerns. And let me emphasize our position, which, of course, the Hague Treaty, Your Honor, is not an issue of who has a custody order first and who doesn't, whether there is one custody order in place or not. The treaty... I understand that completely. But there was an order of February that's discussing where the parties agreed that the habitual residents, the habitual residents, that is, when we talk about habitual residents, we're talking about the Hague Convention. That was the extent... That was a court order of a court of common pleas of Lehigh County. And that court found your client in contempt on two occasions of that order. So I'm just responding to your position. Thank you, Your Honor. And as I do need to reemphasize, the Hague is like a super uniform child custody jurisdiction and enforcement act. It doesn't have a league table where it puts a custody order above a right of custody. And you must, in my submission, go back to the matrix of the treaty. This is not a best interests. And there was really very little evidence before the district court as to what exactly was going on between these parents who have been battling for years. But what we do know is the treaty says, look at Article 3. That must be your starting point. And you must first decide where the habitual residence is of the child. You cannot jump to other parts of the treaty until you first establish what is the habitual residence. And this court has said in Kerkinen, habitual residence can be established after nine weeks. We have a child who lived all of her life essentially in the Netherlands. Let me ask you a question because I had not considered this equity aspect. Is there anything in exercising equity, how does that come into the Hague Act? Is that a requirement to file an action? Is that a consideration in determining who will have custody? It never occurred to me that there would be an examination of petitioners under the Hague Act to see if they had unclean hands. Most respectfully to Judge Aldersot, Judge Roth, my position is where I would submit you seem to be coming from. There are narrow exceptions set out in the scheme of the Hague. So once you get past Article 3, habitual residence, rights of custody and exercising rights of custody, all of which are clearly established in this case, then you get to a number of narrow discretionary exceptions. Is that where equity comes in? No, it doesn't come in at all. Equity does not appear anywhere in the Hague Convention. We have a treaty which we've ratified with... There is an opinion in the Eastern District of Virginia which says that the available remedy, return of the child is equitable in nature. In the Sixth Circuit, in the Prevalt case, they left open the question of whether unclean hands could be asserted as a defense or an exception. Other equitable doctrines have been applied in the Hague Contents. The Eleventh Circuit, on a question of equitable tolling, the Puerto Rico District Court, the Fugitive Disentitlement Doctrine, which is in a sense equity in the Eleventh Circuit. And then there are other cases which indicate that other cases go the other way. So there is a whole body of cases talking about equity here. And again, respectfully, Judge Althusser, I don't agree with that. Are you familiar with those cases? I beg your pardon? Are you familiar with those cases? Yes, there are. Are you familiar with those cases? I am. There are cases which, to benefit the petitioner, there has been a tolling of the one year. But that one-year concept is specifically mentioned in Article 12 of the Treaty. That's the Eleventh Circuit case. And then there is some discussion in some cases as to whether the Fugitive Disentitlement Doctrine would apply in the context of a Hague case. In my submission, that is a jurisdictional argument. The issue of equity and the issue of unclean hands, I think, was only ever specifically mentioned in passing to my recollection in the case called Fawcett v. McRoberts out of the Fourth Circuit, where there was an issue of a father removing a child from Scotland. Of course, if the court is saying there's a case out of the Eastern District of Virginia, I'm not sure if that's the case involving the child in Spain. I'm not sure if that's the Colombian case. I apologize. No, it's a Rodriguez. The name of that case is Hasbon S. Cathy Rodriguez. Yes, Your Honor. I'm very familiar with that. I argued that case before Judge T.S. Ellis, and he did not make a finding, as I recall that case, based on equity. He decided that the child, even though the child was 13, should still be returned to Colombia. Do you see any impropriety in parties contracting for what should be the child's habitual residence? Yes, I see tremendous problems with that. First of all, it would go completely against the jurisprudence of this court. This court has said a number of times that you look to— That would suggest we can just ignore the settlement agreement. That provision of it, at least. If you look back at the February agreement, it seems clear and it's in the record at page 264 through 267. 264 through 267. The February agreement was vacated by the September— That's to say it wasn't vacated. My question was, is there any impropriety in the first instance in agreeing to what would be the child's habitual residence? Yes, because that would be, in our submission, completely inappropriate. You cannot contract a habitual residence when the jurisprudence throughout the world, Judge Fuentes says, you must apply a particular type of test to determine the child's habitual residence. It's a factual analysis, isn't it? Yes, because if you go, and I think this must be the crux of the Hague, if you go to what did the parents agree, then we're missing, most respectfully, the whole point of this treaty. I was wondering whether we should just go by that, assuming that it wasn't vacated, whether we should go by the initial agreement or we should ignore it and look at the facts as they developed over a period of six to eight years. Let's accept, for the purposes of this argument, it was never vacated. There was always an agreement in 2002 that the habitual residence of the child would always be America. That would harm any child who has lived all her life in the Netherlands, spoke Dutch, and then was ripped out of her school playground, put on a plane to Dubai, and then brought back to this country. That is the purpose of this treaty in protecting children. Is that the focus or the child's habituation in a particular country? There are two streams of thought, as you know, Your Honour. There's the Ninth Circuit view, that you look only at the shared intention of the parents, and then there's the other view, the Sixth Circuit, and I would submit this circuit, which says you look at it through the eyes of the child because the treaty is designed to protect the children. So what parents might agree six, seven years previously cannot factor into what is the child's habitual residence. Well, let me put it this way, Counsel. I think the appropriate description is that where you have, as here, a time period where a child has lived in a certain country that in itself trumps the agreement of the parent. It isn't that you ignore it. It is that the actual location of where the child lived is a stronger factor. I think we better just understand that. And most respectfully, I think you have to agree to disagree on that because my position is you can draft a document today, Your Honour, that says the habitual residence is the United States, but if everyone agrees the child's going to Scotland tomorrow, then Scotland is the child's habitual residence that's of tomorrow. That is my position. Sir, I apologise to help you, and you've thrown it out. Let's go to my main problem. In this case, is the ignoring of the court of common pleas orders and where she was found in contempt. I know you disagree that equity does not apply, but how could we, if we ruled in favour of your client at this time, with her past record of denying custody, what protection is there for the father if we agree that the Netherlands is the habitual residence and if we agree that in this case, if we agree with the district court, what is there to protect the father from ever seeing this child in the Netherlands? Yes, Your Honour. The United States found fit to ratify this treaty with the sovereign nation of the Netherlands. And, Your Honour, in doing so, the United States has recognised that this is a country that we can do business with on the level of child custody issues and that we trust the Netherlands to apply the appropriate standard in its court either in recognising and enforcing the Lehigh orders or in carving out its own decision based on the best interests of the child. And none of those issues have been dealt with in The Hague, of course, because we're still at the point as to which court is to exercise that jurisdiction. And so my submission, judges, you can... Let's assume it's the Netherlands. Is it not a fact that the substantive law of the Netherlands provides for joint custody? Joint rights of custody, as that is defined under Article 5 of the treaty, because one has to keep in mind, Your Honour, that the concept of custody under Article 5 is... I'm asking about the substantive law. I'm looking at what we decide here is very important. And there's so many... There's a real can of worms, with all due respect. But it's my understanding that the... Are you familiar with the substantive law of custody in the Netherlands? Yes, pursuant to the European Convention on Human Rights under Article 8, both parents must have substantive rights to have access to their children. And the respondent's own expert... All right, maybe you can answer that. Yes. The respondent's own expert, Judge Schwentes, stated quite clearly that, and I believe it's page 1217 of the record, that parents have de jure rights of custody jointly with respect to their children. Yeah, I understand that. I think Judge Allen... That's all I have. Oh, okay. Can we talk briefly about the state court judge's order that allowed the father to pick up the child virtually anywhere in the world? I have not been familiar with that kind of jurisdiction. It's allowing a state court judge to say, you can pick up your child in Russia, in South Africa, anywhere in Europe. I thought that was a little broad, but I could be mistaken. And maybe Ms. Garner could help me with that. Now, but you don't question the trial court's authority to issue that type of order? It was, in my respectful submission, completely illegitimate. You cannot, in one sovereign nation... Yeah, that's your feeling about it. Well, no, it's to do with... Is there a Pennsylvania law or a federal law that would affect that kind of jurisdiction? Well, there's Dutch law, which says we don't give... There's no evidence, there's no suggestion that a Pennsylvania... That's because the mother had jurisdiction in Holland. Correct. So what he had to do, I gather from your position, is he had to, as Judge Roth said, register that order in Holland, and then the court could address it. Exactly, that's pages 1206 through 12. Well, that would suggest that the Pennsylvania judge could issue such an order, but it would have no effect in Holland. Is that right? I suppose any judge in any country can issue any order. Right. The question then is under international comity, whether you can just then walk into another sovereign nation and use self-help and ignore the rule of law. We have a rule of law, and the Netherlands have a rule of law. So he might have been able to do what he did legally if he had domesticated the order in Holland, and the Dutch court would have accepted it. Yes, because by analogy, may I just... For one moment, we have the very same statute in this country. The Uniform Child Custody Jurisdiction Enforcement Act in Pennsylvania says, if you have a foreign order, bring it to us and register it, and then as long as you satisfy certain due process requirements and notice requirements, we can enforce it. That's all this gentleman had to do, and the fact he never did that, and the fact he snatched his daughter, who he hadn't seen for three years, I'm not justifying that, but imagine the impact on the child. Bundled into a car... He didn't try. He didn't try to see her, did he? He had an order, and your client moved without giving him the address of where she and the child was. She ignored the orders of a Pennsylvania court. Now, you know, I concede that there is a lot in your favor in this case. The main thing in your favor is the fact that the child spent so much time in the Netherlands, okay? But I go back to the thing that bothers me more than anything else is the conduct of your client denying the father of this child the opportunity to see the child when she agreed that he would see her three or four times a year and periods of three weeks at each time. Yes, Judge, but my submission is one cannot put that individual case above the rule of law, and this treaty was drafted to prevent abduction and reabduction and re-reabduction, and that's the purpose of the treaty, and this country trusts the Netherlands to do the right thing because we've contracted with this country with this treaty. Well, if a Pennsylvania judgment is registered in the Netherlands, is Mrs. Karpenko going to stick around or is she going to pick up the kid and run somewhere else? I'll answer that. Let me first say that issue is obviously not before the court and is not an issue in the treaty itself. The treaty doesn't say return the child, but don't return the child if we think the child might be further abducted. Well, he must have visitation rights in Holland because Holland has joint custody. Yes, he will come to Holland. He doesn't have to show up and say, I want to exercise my rights. But he didn't know where she was living, but nevertheless, if he had shown up in Holland and filed in the court, could he have tracked her down? Yes, because the European Convention on Human Rights requires that both parents have meaningful access. I mean, there's a representative, Sonia Litz, from the Dutch government here today. I can't imagine that she would say to you, this father's going to go through this process, we're going to go through this third circuit, and the Dutch court is going to say this father's never going to see his daughter again. That's just unconscionable. Okay. I agree. Mr. Colin, thank you very much. Ms. Garner, you have five minutes. Thank you, Your Honor. I'd like to point out a couple of things. One is, will she stay around? That was never answered. And I think it's clear from the record in this case, Ms. Karpenko isn't going to stay around anywhere. She isn't going to give Mr. Leendertz the right to see his child. And Ms. Mustobe, who testified at the trial, clearly said, you will not get the court, you will not get the police to help you enforce an order. If she wasn't there, she wouldn't be here. When this matter was before the district court in consideration of the, let me call them the defenses, in consideration of the exceptions, was the fact that Ms. Karpenko would disappear as a child presented to the court to consider as a reason for an exception. Absolutely. And it was also mentioned- What findings did the court make on that? That, I think this comes out clearly in the findings in the second order that the court entered, where the stay was granted. Well, but that wasn't dealing with the exceptions to the original order. And if that issue was presented to the district judge, what is our standard of review in determining to uphold it or not? Well, I think, you know, the abuse of discretion or the clear error, and I think here, a clear error in application of the law. And that is that, you know, if mother is not going to follow orders in Lehigh County, she's not- Well, that, how was that issue presented and how is that, how is the resolution of that issue, that ruling on the exception, dealt with in the court's first order? In the court's first order, it talked about mother's credibility and specifically the fact that she had not followed court orders. Okay, so it was not seen by the district court then as a sufficient threat to deny the application of the Hague Convention? I don't believe it was, no. Okay, and have you raised that on your appeal? Yes, I did. And I think that the other thing that comes into this- Okay, let me, tell me exactly where you raised that. I believe specifically in pages 14 and 15, we talk about that and we talk about mother should be barred from- Where in the argument? That 14 and 15. I don't, I don't see where the fact that she would run with the child was presented to the district court as a reason why the Hague Act should not operate. And certainly, I think that could be a consideration under the Hague Act that it should not operate because the mother, if the child is returned to the mother, the mother's gonna disappear. Yes. You've raised that, but you raise it as a subset under grave risk of physical or psychological harm to the child. But I'm looking at the arguments on page two and three of your brief, but I don't see that as a specific item in your brief. It may not have been set out separately as a specific item, but I think it is. I've talked in here about those particular issues and the fact that I think, in a sense, mom has, by not appearing in Lehigh County, she had already had her decided what she was going to do. She was not gonna abide by the orders. The court had given her six months to allow visits. I'm losing- She didn't. I'm losing focus of one thing. The purpose of the Hague Convention versus state court custody determinations. You seem to be focusing on visitation and custody, while I thought that the Hague Convention's focus was what is the child's country of habitual residence? And in making that Hague Convention determination, should we consider transgressions or violations of custody and visitation orders? Is that appropriate to consider under a Hague Convention analysis? I think it is in the sense that- Is there something in the convention that says that we can consider it? Well, I think we're looking at issues of comedy and having orders enforced in different countries. And if they're not- And it's clear in the transcripts that- In comedy, you're talking about orders enforced. You're talking about custody, right? Right. And the Hague Convention is not about custody. It's about the determination of jurisdiction for custody purposes. Right. Ms. Gardner, let me stop you right there. Your appropriate answer is no. The Hague Convention doesn't do it. But where that does come in is whether this plaintiff can come in and under an equitable principle seek to enforce the Hague Convention when she does not have clean hands. That's the only way that comes in. Yes, thank you. And Ms. Gardner, thank you very much. Thank you. Time is up. Mr. Cullen, thank you both. Very interesting case. We'll take the matter under advice.